E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KELSEY A. STIMSON (Cal. Bar No.: Pending)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8230
    Facsimile: (213) 894-6269
    Email:    kelsey.stimson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>CEZAR PETRE BARBU,<br>  aka "Styrbiorn Nansen,"<br>  aka "Oase,"<br><br>       Defendant. | No. CR 23-519-WLH-1<br><br>PLEA AGREEMENT FOR DEFENDANT<br>CEZAR PETRE BARBU |

    1.   This constitutes the plea agreement between CEZAR PETRE BARBU ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts six and nine

of the first superseding indictment in <u>United States v. CEZAR PETRE</u>
<u>BARBU</u>, CR No. 23-519-WLH-1, which charge defendant with bank fraud,
in violation of 18 U.S.C. § 1344(2) (count six), and aggravated
identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (count nine).

      b.   Not contest facts agreed to in this agreement.

      c.   Abide by all agreements regarding sentencing contained
in this agreement.

      d.   Appear for all court appearances, surrender as ordered
for service of sentence, obey all conditions of any bond, and obey
any other ongoing court order in this matter.

      e.   Not commit any crime; however, offenses that would be
excluded for sentencing purposes under United States Sentencing
Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
within the scope of this agreement.

      f.   Be truthful at all times with the United States
Probation and Pretrial Services Office and the Court.

      g.   Pay the applicable special assessments at or before
the time of sentencing unless defendant has demonstrated a lack of
ability to pay such assessments.

      h.   Defendant agrees that any and all criminal debt
ordered by the Court will be due in full and immediately.  The
government is not precluded from pursuing, in excess of any payment
schedule set by the Court, any and all available remedies by which to
satisfy defendant's payment of the full financial obligation,
including referral to the Treasury Offset Program.

      i.   Complete the Financial Disclosure Statement on a form
provided by the USAO and, within 30 days of defendant's entry of a
guilty plea, deliver the signed and dated statement, along with all

1  of the documents requested therein, to the USAO by either email at

2  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

3  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

4  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

5  criminal debt shall be assessed based on the completed Financial

6  Disclosure Statement and all required supporting documents, as well

7  as other relevant information relating to ability to pay.

8          j.   Authorize the USAO to obtain a credit report upon

9  returning a signed copy of this plea agreement.

10         k.   Consent to the USAO inspecting and copying all of

11  defendant's financial documents and financial information held by the

12  United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

14     3.   The USAO agrees to:

15         a.   Not contest facts agreed to in this agreement.

16         b.   Abide by all agreements regarding sentencing contained

17  in this agreement.

18         c.   At the time of sentencing, move to dismiss the

19  remaining counts of the first superseding indictment and the

20  underlying indictment as against defendant.  Defendant agrees,

21  however, that at the time of sentencing the Court may consider any

22  dismissed charges in determining the applicable Sentencing Guidelines

23  range, the propriety and extent of any departure from that range, and

24  the sentence to be imposed.

25         d.   At the time of sentencing, provided that defendant

26  demonstrates an acceptance of responsibility for the offenses up to

27  and including the time of sentencing, recommend a two-level reduction

28  in the applicable Sentencing Guidelines offense level, pursuant to

3

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3          e.   Recommend that, before imposition of the mandatory

4  consecutive sentence of two years' imprisonment on count nine,

5  defendant be sentenced to a term of imprisonment no higher than the

6  low end of the applicable Sentencing Guidelines range, provided that

7  the offense level used by the Court to determine that range is 14 or

8  higher and provided that the Court does not depart downward in

9  offense level or criminal history category.  For purposes of this

10  agreement, the low end of the Sentencing Guidelines range is that

11  defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.  In

12  making a recommendation no higher than the low-end of the applicable

13  Sentencing Guidelines range, the USAO may include aggravating

14  information concerning defendant's conduct in this case and/or his

15  personal history and characteristics to support the recommended

16  sentence, and to argue against, respond to, and rebut any request or

17  anticipated request by defendant for a sentence below the low-end of

18  the applicable Sentencing Guidelines range.

19                          NATURE OF THE OFFENSES

20     4.   Defendant understands that for defendant to be guilty of

21  the crime charged in count six, that is, bank fraud in violation of

22  Title 18, United States Code, Section 1344(2), the following must be

23  true: (1) the defendant knowingly carried out a scheme or plan to

24  obtain money or property from a financial institution by making false

25  statements or promises; (2) the defendant knew that the statements or

26  promises were false; (3) the statements or promises were material;

27  that is, they had a natural tendency to influence, or were capable of

28  influencing, a financial institution to part with money or property;

                                    4

1  (4) the defendant acted with the intent to defraud; and (5) the
2  financial institution was federally insured.

3      5.    Defendant understands that for defendant to be guilty of
4  the crime charged in count nine, that is, aggravated identity theft,
5  in violation of 18 U.S.C. § 1028A(a)(1), the following must be true:
6  (1) defendant knowingly transferred, possessed, or used without legal
7  authority a means of identification of another person; (2) defendant
8  knew that the means of identification belonged to a real person; and
9  (3) defendant did so during and in relation to the commission of a
10 felony, namely bank fraud, in violation of 18 U.S.C. § 1344(2), as
11 charged in count six of the first superseding indictment.  "Means of
12 identification" includes "any name or number that may be used, alone
13 or in conjunction with any other information, to identify a specific
14 individual," and specifically includes any "unique electronic
15 identification number."  18 U.S.C. §§ 1028A(a)(1), 1028(d)(7).

16                        PENALTIES AND RESTITUTION

17     6.    Defendant understands that the statutory maximum sentence
18 that the Court can impose for a violation of Title 18, United States
19 Code, Section 1344(2), as charged in count six, is: 30 years'
20 imprisonment; a 5-year period of supervised release; a fine of
21 $1,000,000 or twice the gross gain or gross loss resulting from the
22 offense, whichever is greatest; and a mandatory special assessment of
23 $100.

24     7.    Defendant understands that the statutory maximum sentence
25 that the Court can impose for a violation of Title 18, United States
26 Code, Section 1028A(a)(1), as charged in count nine, is: two years'
27 imprisonment; a 1-year period of supervised release; a fine of
28 $250,000 or twice the gross gain or gross loss resulting from the

5

offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 32 years' imprisonment; a 5-year period of supervised release;[1] a fine of $1,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

9.    Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 18, United States Code, Section 1028A, as charged in count nine of the superseding indictment, is two years' imprisonment, which must run consecutive to any other sentence of imprisonment, and a mandatory special assessment of $100.

10.    Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses

---

[1] Defendant understands that there is case law suggesting that the term of supervised release on count nine could be imposed to run consecutively to the term of supervised release on the other count. While the USAO does not intend to seek a consecutive term of supervised release, defendant understands that if the Court were to impose a consecutive term of supervised release, the maximum term of supervised release for all of the counts of conviction would be six years, rather than five years as stated in the text above.

suffered by that victim as a result: (a) any relevant conduct, as
defined in U.S.S.G. § 1B1.3, in connection with the offenses to which
defendant is pleading guilty; and (b) any counts dismissed pursuant
to this agreement as well as all relevant conduct, as defined in
U.S.S.G. § 1B1.3, in connection with those counts.  The parties
currently believe that the applicable amount of restitution is
approximately $66,331, but recognize and agree that this amount could
change based on facts that come to the attention of the parties prior
to sentencing.

11.  Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be subject
to various restrictions and requirements.  Defendant understands that
if defendant violates one or more of the conditions of any supervised
release imposed, defendant may be returned to prison for all or part
of the term of supervised release authorized by statute for the
offense that resulted in the term of supervised release, which could
result in defendant serving a total term of imprisonment greater than
the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury. Defendant
understands that he is pleading guilty to a felony and that it is a
federal crime for a convicted felon to possess a firearm or
ammunition.  Defendant understands that the convictions in this case
may also subject defendant to various other collateral consequences,
including but not limited to revocation of probation, parole, or
supervised release in another case and suspension or revocation of a

professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

13.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

14.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided in Appendix A and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below but is not meant to be a complete recitation of all facts relevant to the

underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

15.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

16.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Amount of More than $40,000: | +6 | U.S.S.G. § 2B1.1(b)(1)(D) |
| Involved 10 or More Victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |
| Involved Possession or Use of Device-Making Equipment: | +2 | U.S.S.G. § 2B1.1(b)(11)(A)(i) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 14 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the

9

conditions set forth in paragraph (2) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below. Subject to paragraph 30 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above. Defendant understands that the Court must sentence defendant to a term of two years' imprisonment on count nine, which must run consecutive to any term of imprisonment imposed for count six.

17. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing

1  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
2  (a)(2), (a)(3), (a)(6), and (a)(7).

3                    <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

4      19.  Defendant understands that by pleading guilty, defendant
5  gives up the following rights:

6          a.  The right to persist in a plea of not guilty.

7          b.  The right to a speedy and public trial by jury.

8          c.  The right to be represented by counsel -- and if
9  necessary have the Court appoint counsel -- at trial.  Defendant
10 understands, however, that, defendant retains the right to be
11 represented by counsel -- and if necessary have the Court appoint
12 counsel -- at every other stage of the proceeding.

13         d.  The right to be presumed innocent and to have the
14 burden of proof placed on the government to prove defendant guilty
15 beyond a reasonable doubt.

16         e.  The right to confront and cross-examine witnesses
17 against defendant.

18         f.  The right to testify and to present evidence in
19 opposition to the charges, including the right to compel the
20 attendance of witnesses to testify.

21         g.  The right not to be compelled to testify, and, if
22 defendant chose not to testify or present evidence, to have that
23 choice not be used against defendant.

24         h.  Any and all rights to pursue any affirmative defenses,
25 Fourth Amendment or Fifth Amendment claims, and other pretrial
26 motions that have been filed or could be filed.

27

28

<u>WAIVER OF APPEAL OF CONVICTION</u>

20.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

21.  Defendant agrees that, provided the Court, before imposition of the mandatory consecutive sentence of 2 years' imprisonment on count nine, imposes a term of imprisonment within or below the range corresponding to an offense level of 14 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $66,331; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this

Court; the drug testing conditions mandated by 18 U.S.C.
§§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions
authorized by 18 U.S.C. § 3563(b)(7).

22.   The USAO agrees that, provided (a) all portions of the
sentence are at or above the statutory minimum and at or below the
statutory maximum specified above and, (b) before imposition of the
mandatory consecutive sentence of two years' imprisonment on count
nine, the Court imposes a term of imprisonment on the remaining count
of conviction within or above the range corresponding to an offense
level of 14 and the criminal history category calculated by the
Court, the USAO gives up its right to appeal any portion of the
sentence, with the exception that the USAO reserves the right to
appeal the amount of restitution ordered if that amount is less than
$66,331.

23.   Defendant also gives up any right to bring a post-
conviction collateral attack on the convictions or sentence,
including any order of restitution, except a post-conviction
collateral attack based on a claim of ineffective assistance of
counsel, a claim of newly discovered evidence, or an explicitly
retroactive change in the applicable Sentencing Guidelines,
sentencing statutes, or statutes of conviction.  Defendant
understands that this waiver includes, but is not limited to,
arguments that the statutes to which defendant is pleading guilty are
unconstitutional, and any and all claims that the statement of facts
provided herein is insufficient to support defendant's pleas of
guilty.  This agreement does not affect in any way the right of the
USAO to appeal the sentence imposed by the Court.

13

1

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

2    24.  Defendant agrees that if, after entering guilty pleas
3 pursuant to this agreement, defendant seeks to withdraw and succeeds
4 in withdrawing defendant's guilty pleas on any basis other than a
5 claim and finding that entry into this plea agreement was
6 involuntary, then (a) the USAO will be relieved of all of its
7 obligations under this agreement; and (b) should the USAO choose to
8 pursue any charge that was either dismissed or not filed as a result
9 of this agreement, then (i) any applicable statute of limitations
10 will be tolled between the date of defendant's signing of this
11 agreement and the filing commencing any such action; and
12 (ii) defendant waives and gives up all defenses based on the statute
13 of limitations, any claim of pre-indictment delay, or any speedy
14 trial claim with respect to any such action, except to the extent
15 that such defenses existed as of the date of defendant's signing this
16 agreement.

17

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

18    25.  Defendant agrees that if any count of conviction is
19 vacated, reversed, or set aside, the USAO may: (a) ask the Court to
20 resentence defendant on any remaining counts of conviction, with both
21 the USAO and defendant being released from any stipulations regarding
22 sentencing contained in this agreement, (b) ask the Court to void the
23 entire plea agreement and vacate defendant's guilty pleas on any
24 remaining counts of conviction, with both the USAO and defendant
25 being released from all their obligations under this agreement, or
26 (c) leave defendant's remaining convictions, sentence, and plea
27 agreement intact.  Defendant agrees that the choice among these three
28 options rests in the exclusive discretion of the USAO.

14

EFFECTIVE DATE OF AGREEMENT

26.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

27.   Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to

16

1    maintain its view that the calculations in paragraph 16 are

2    consistent with the facts of this case.  While this paragraph permits

3    both the USAO and defendant to submit full and complete factual

4    information to the United States Probation and Pretrial Services

5    Office and the Court, even if that factual information may be viewed

6    as inconsistent with the facts agreed to in this agreement, this

7    paragraph does not affect defendant's and the USAO's obligations not

8    to contest the facts agreed to in this agreement.

9        31.  Defendant understands that even if the Court ignores any

10   sentencing recommendation, finds facts or reaches conclusions

11   different from those agreed to, and/or imposes any sentence up to the

12   maximum established by statute, defendant cannot, for that reason,

13   withdraw defendant's guilty pleas, and defendant will remain bound to

14   fulfill all defendant's obligations under this agreement.  Defendant

15   understands that no one -- not the prosecutor, defendant's attorney,

16   or the Court -- can make a binding prediction or promise regarding

17   the sentence defendant will receive, except that it will be between

18   the statutory mandatory minimum and the statutory maximum.

19                        NO ADDITIONAL AGREEMENTS

20       32.  Defendant understands that, except as set forth herein,

21   there are no promises, understandings, or agreements between the USAO

22   and defendant or defendant's attorney, and that no additional

23   promise, understanding, or agreement may be entered into unless in a

24   writing signed by all parties or on the record in court.

25   //

26   //

27

28

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____     June 3, 2024
KELSEY A. STIMSON                    Date
Assistant United States Attorney

_____     5/10/14
CEZAR PETRE BARBU                    Date
Defendant

_____     5/28/24
ERIN DARLING                         Date
Attorney for Defendant CEZAR PETRE
BARBU

18

## CERTIFICATION OF DEFENDANT

This agreement has been read to me in Romanian, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        5/21/24
CEZAR PETRE BARBU                         Date
Defendant

19

<u>CERTIFICATION OF INTERPRETER</u>

I, ___Val Monafu___, am fluent in the written and spoken English and Romanian languages.  I accurately translated this entire agreement from English into Romanian to defendant CEZAR PETRE BARBU on this date.

_____          5/28/2024
INTERPRETER                               Date

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am CEZAR PETRE BARBU's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          5/30/24
ERIN DARLING                              Date
Attorney for Defendant
CEZAR PETRE BARBU

20

APPENDIX A

Beginning no later than on or about July 31, 2023, and continuing through at least on or about October 9, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant Cezar Petre Barbu ("defendant") and his co-schemers, including co-defendant Petruta Feraru ("Feraru"), each aiding and abetting the other, knowingly and with intent to defraud, devised and executed a scheme to obtain moneys, funds, assets, and other property owned by and in the custody and control of financial institutions, including Bank of America and U.S. Bank, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  The financial institutions were at all relevant times insured by the Federal Deposit Insurance Corporation.

The fraudulent scheme operated, and was carried out, in substance, in the following manner:

a.   Defendant and Feraru, themselves or working in concert with others, installed skimming devices and pinhole cameras at automated teller machines ("ATMs"), including at Bank of America and U.S. Bank ATMs, to surreptitiously record the account information and corresponding personal identification numbers ("PINs") of victim bank customers.  Many of these accounts were Electronic Benefit Transfer ("EBT") or California Employment Development Department ("EDD") accounts, which were utilized by victim bank customers to obtain benefits intended for low-income or unemployed California residents, respectively

b.   Defendant and Feraru, themselves or working in concert with others, then re-encoded prepaid credit cards or gift cards (also

21

1    known as "cloned cards") with EBT or EDD account information stolen

2    by skimming devices, or they would obtain cloned cards that had been

3    re-encoded with EBT and EDD account information.

4          c.    Defendant and Feraru, and others, then used the cloned

5    EBT and EDD cards, along with the corresponding stolen PIN numbers

6    and personal identifying information, to steal money from the

7    financial institutions and the victim bank customers by conducting

8    fraudulent cash withdrawals, including of CalFresh, CalWorks, and EDD

9    benefits.  In doing so, defendant and Feraru falsely represented to

10   the bank that they were the account holder and were otherwise an

11   authorized user of the card, and concealed that the withdrawals

12   defendant and Feraru made with the re-encoded EBT and EDD cards were

13   made without the authorized user's consent.  Defendant admits that

14   these representations and omissions were material to the banks.

15        For example, and not in any way intending to limit the scope of

16   defendant's offense conduct, in furtherance of the scheme, on or

17   about the following dates, in Los Angeles County, within the Central

18   District of California, and elsewhere, defendant knowingly and

19   intentionally used stolen account information and corresponding PINs

20   to make the following fraudulent withdrawals:  (i) on August 1, 2023,

21   defendant used an EDD card issued to D.F. to withdraw $560 at a Bank

22   of America ATM in Los Angeles, California; (ii) on August 1, 2023,

23   defendant used an EDD card issued to Z.R. to withdraw $1,980 at a

24   Bank of America ATM in Los Angeles, California; (iii) on October 2,

25   2023, defendant used an EBT card issued to S.R.M. to withdraw $1,600

26   at a U.S. Bank ATM in Glendale, California; and (iv) on October 2,

27   2023, defendant used an EBT card issued to A.A. to withdraw $1,340 at

28   a U.S. Bank ATM in Glendale, California.  In so doing, defendant

knowingly possessed and used, without lawful authority, a means of identification that defendant knew belonged to another real person, namely, the EDD account number and PIN of victim A.A., during and in relation to the above-referenced $1,340 fraudulent withdrawal on October 2, 2023.

In total, through their scheme, defendant and Feraru conducted at least 94 fraudulent transactions, withdrawing a total of at least approximately $66,331 in funds from EBT and EDD accounts belonging to no fewer than 57 account holders. Defendant withdrew those funds without the victims' authorization and with the intent to defraud Bank of America and U.S. Bank of funds within their custody and control.

Additionally, when Feraru was arrested, she possessed in the vehicle that she was driving 3 pinhole cameras; 1 ATM skimmer; and 1 skimmer insertion and removal device. When defendant was arrested, he possessed in his residence shared with Feraru, 3 pinhole cameras; 1 ATM skimmer; 6 ATM skimmer insertion and removal devices; cables that connect a skimmer to a laptop (for the purpose of data transfer); and access device making equipment. Defendant and Feraru also possessed in the shared residence approximately 213 access devices that had been cloned with victims' EBT or EDD account information. Some of the cards had victims' PINs written on them. At least approximately 22 of the cards contained EBT account information corresponding to victims' EBT accounts.